IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 8, 2020

**STATE OF TENNESSEE v. MICHAEL CHAMBERS**

**Appeal from the Criminal Court for Shelby County**
**No. 16-05773        Chris Craft, Judge**

_____

**No. W2019-00661-CCA-R3-CD**

_____

The Defendant-Appellant, Michael Chambers, was convicted by a Shelby County jury of felony vandalism of property in an amount $2,500 or more but less than $10,000, in violation of Tennessee Code Annotated section 39-14-408, a Class D felony.[1] The Defendant was sentenced as a Range II, multiple offender, to six years to be served on supervised probation. In this appeal as of right, the sole issue presented for our review is whether the evidence is sufficient to sustain the Defendant's conviction for felony vandalism. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Phyllis Aluko, District Public Defender, and Harry E. Sayle, III, Assistant Public Defender, for the Defendant-Appellant, Michael Chambers.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

---

[1] The Defendant was also convicted of reckless endangerment as a lesser included offense of attempted second degree murder and assault as a lesser included offense of aggravated assault. However, because the Defendant only challenges his vandalism conviction on appeal, we will not address his other convictions.

In the middle of the night on May 14, 2016, the Defendant went to Links Logistics, a freight processing site for Walmart and the Defendant's previous place of employment. Around halfway through the night shift, the site manager, Leroy Hudson, instructed the Defendant to leave because the Defendant had been fired from Links Logistics three months prior. A physical altercation ensued between the Defendant and Hudson, which culminated in the Defendant chasing Hudson around the warehouse on a forklift, picking up Hudson's truck with the forklift, and flipping the truck on its side. The Defendant was arrested and charged with attempted second-degree murder, aggravated assault, and vandalism of property in an amount $10,000 or more but less than $60,000. The Defendant's sole point of contention on appeal is that no evidence was presented as to the value of the victim's vehicle after it was totaled, and, as such, "there [was] no way to tell how the jury reached a value between $2,500 and $10,000." The following proof was adduced at the Defendant's jury trial, which took place on September 24-26, 2018.

Leroy Hudson testified that he worked the night shift as an operations manager at Links Logistics on May 4, 2016. He stated that Links Logistics was located at 1980 Getwell Road in Shelby County. Hudson stated that, on that night, the Defendant trespassed on the dock. The Defendant had previously worked as a forklift operator at Links Logistics, but he was fired three months prior to this incident. Hudson stated that he heard a lot of unusual noise going on outside, and he responded to the dock, where he saw the Defendant talking to the supervisor. He asked the Defendant why he was there, and the Defendant approached Hudson and grabbed his shirt. Hudson told the Defendant to "get your hands off me[,]" and the Defendant knocked Hudson's glasses off. Hudson hit the Defendant, and the Defendant started "rolling up his hand[,]" which Hudson interpreted as the Defendant wanting a confrontation. Hudson pulled a box cutter out of his pocket, and he began walking away from the Defendant. He tried to call the police, but he was unable to unlock his phone.

As Hudson was walking down the dock, he heard the "roaring of the tow motor [of the fork lift]" coming down the dock. He turned and saw the Defendant driving towards him on the forklift. He jumped out of the way, and the Defendant turned the forklift around and came at Hudson again. Hudson said he was trying to "avoid getting ran [sic] over with the fork lift, so [he's] running through the freight trying to dodge [the Defendant], making [his] way toward the office at the same time." Hudson then went out the exit nearest to his office and went down the steps. The Defendant then "shot past [Hudson] going towards [Hudson's] truck and [the Defendant] put the slip up underneath [sic] [Hudson's] truck and picked it up . . . on the side and then flipped it over." Hudson stated that his truck was a burgundy, 2007 Chevrolet Avalanche that was in "excellent condition." He said that he bought the truck for 38,000 dollars. Hudson described the forklift as a "slip machine" with two blades that were approximately eight inches wide

and five feet long, and he said that these forklifts could move "pretty fast." After the Defendant flipped Hudson's truck on its side, he drove the forklift to the exit and left in his car. Hudson called the police and gave a statement a few days later in which he identified the Defendant in a photographic lineup.

Hudson had his truck towed to his house, and he filed a claim with his insurance company, Allstate. The insurance adjuster assessed the damages and told Hudson that his truck was totaled. The Defendant received a check for 12,800 dollars from his insurance company, which was determined to be the value of his vehicle. Hudson identified several photographs of his truck after it was flipped on its side, and these were entered into evidence. Hudson also identified photographs of the Links Logistics' facility. The State also introduced a security camera video showing "the dock and everything that was going on on the dock that night."[2] Hudson identified the Defendant at trial.

On cross-examination, Hudson testified that he had worked in warehouses for several years, and he was familiar with forklifts. He acknowledged that the forklift used by the Defendant that night could go ten to eleven miles per hour. Hudson testified that he had his truck for eight to nine years at the time of the incident.

Michael James, an employee of Links Logistics, testified that he was working on the night of the offense. He was in the trailer when he heard the Defendant's voice. James came out of the trailer and told the Defendant, "[G]et the f--k off my dock." James testified largely consistently with the testimony of Hudson about the altercation between Hudson and the Defendant and the ensuing events. James said that when he went outside, the Defendant "had already got up under [the] truck, lifted it up, and it was tilting over." He said that the Defendant then backed the forklift up, looked at James and said, "it's not over[,]" drove to his car, and drove away. James also identified photographs of Hudson's truck. Christopher Williams, another employee of Links Logistics, was also working on the night of the offense. Williams corroborated the testimony of Hudson and James and also identified photographs of Hudson's truck.

Memphis Police Department (MPD) Officer Timmy Mitchell testified that he responded to 1980 Getwell Road on the night of the offense, where he observed "a red pickup truck flipped on its side." Officer Mitchell identified photographs of the truck at trial. Officer Mitchell spoke to Hudson at the scene. MPD Sergeant Russell Noel testified that he was assigned to the Defendant's case. He went to the Links Logistics warehouse, obtained a copy of the security camera footage, interviewed Hudson, and

---

[2] This video was included in the record on appeal, but we were unable to play the video due to technical issues.

showed him a photographic lineup. After Hudson identified the Defendant, Sergeant Noel obtained an arrest warrant for the Defendant.

Don Lear testified that he was employed by Allstate Insurance, and he was assigned to Hudson's claim in June 2016. He reported to Hudson's house to assess the damage to Hudson's vehicle using a computer estimating system. Lear stated that the photographs showing Hudson's vehicle flipped on its side were of the same vehicle that he examined at Hudson's house. He said that Hudson's vehicle was an "average to above-average vehicle." Regarding the value of the vehicle, Lear stated, "Including tax and a tag fee, it was $12,812.83. There is a $250 deductible which applies, so it would be $12,562.83 was the value of the car with tax and a tag fee, minus the deductible." On cross-examination, Lear stated that the cost of repairs to Hudson's vehicle was $9,488.24. He stated "you can only spend up to 75 percent of the value in the State of Tennessee before the vehicle has to have a salvage title[;]" therefore, he determined that Hudson's vehicle was totaled.

The Defendant did not present any proof on his own behalf. Following deliberations, the jury convicted the Defendant of felony vandalism of property in an amount more than $2,500 but less than $10,000, reckless endangerment as a lesser included offense of attempted second-degree murder, and assault as a lesser included offense of aggravated assault.

The trial court conducted a sentencing hearing on November 8, 2018. The Defendant's presentence report and certified copies of his convictions were entered as exhibits. Tina Stafford from the Tennessee Department of Corrections testified that the Defendant's parole sentence for a 2009 aggravated robbery conviction expired on April 5, 2017. The Defendant testified at his sentencing hearing, and he entered letters from his family and friends as exhibits. Following the hearing, the trial court sentenced the Defendant, as a Range II offender, to six years to be served on supervised probation. On March 18, 2019, the trial court conducted a hearing on the Defendant's motion for new trial, which was denied by written order. The Defendant filed a timely notice of appeal, and his case is now properly before this Court for our review.

## ANALYSIS

The Defendant's sole argument on appeal is that the evidence is insufficient to sustain his conviction for felony vandalism. He argues that no evidence was presented as to the value of Hudson's vehicle before and after it was damaged by the forklift. As such, he asserts, "[T]here is no way to tell how the jury reached a value between $2,500 and $10,000." He also states that the insurance adjuster's estimate of the damage was "not an indication of the value of the vehicle or the loss." He continues, "In the present

case[,] cost of repair is precluded because the vehicle could not be repaired because the cost of repair was 75% of the value of the vehicle before the damage, so it had to be totaled." The Defendant also states that the trial court gave the following jury instruction on determining the value of property in a vandalism case: "[I]n determining the value of the damage to the property vandalized, the value of the damage shall be fixed at the amount of the damage." He asserts that the trial court did not give the Tennessee Pattern Jury Instruction (TPI)[3] because the trial court found that "there was no testimony as to the reasonable cost of repairing the damage to the property[,]" and because the Defendant objected to the language in the TPI.

The State responds that the evidence was sufficient to support the Defendant's conviction for felony vandalism. Citing State v. Thomas Bolton, No. W2012-02000-CCA-R3-CD, 2014 WL 12653829, at * 9 (Tenn. Crim. App. Jan. 31, 2014), the State asserts, "This Court has consistently held 'that the value of the cost of repairs is an appropriate means of determining the value of the damage sustained by vandalized property.'" The State contends, "From [] Lear's testimony, the jury could reasonably determine that the cost to repair the truck was more than $2,500 but less than $10,000." We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of

---

[3] T.P. I. Crim. 11.03(a) states, [(G) In determining the value of the property vandalized, the value of the property shall be fixed at the amount of the damage, the reasonable cost of repairing the damage to the property, or the cost of replacement of the property vandalized.]

review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

Tennessee Code Annotated § 39-14-408(b)(1) states:

(b) A person commits the offense of vandalism who knowingly:

(1) Causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent.

"A person violating subdivision (b)(1) or (b)(3) is a principal under § 39-11-401 and shall be punished as for theft under § 39-14-105, after determining value under § 39-11-106." Tenn. Code Ann. § 39-14-408(c)(1). Under Tenn. Code Ann. § 39-14-105:

(a) Theft of property or services is:

(1) A Class A misdemeanor if the value of the property or services obtained is one thousand dollars ($1,000) or less;

(2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);

(3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000);

(4) A Class C felony if the value of the property or services obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000);

Value of property is defined as follows:

(A) Subject to the additional criteria of subdivisions (a)(38)(B)-(D), "value" under this title means:

(i) The fair market value of the property or service at the time and place of the offense; or

(ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense;

. . .

(C) If property or service has value that cannot be ascertained by the criteria set forth in subdivisions (a)(38)(A) and (B), the property or service is deemed to have a value of less than fifty dollars ($50.00)[.]

Tenn. Code Ann. § 39-11-106 (38). "[T]his court has consistently held that the value of the cost of repairs is an appropriate method of determining the value of damage sustained by vandalized property." Thomas Bolton, 2014 WL 12653829, at *9 (internal citations omitted). This Court has "even approved the use of replacement or repair costs to determine value when the fair market value has not been addressed and could feasibly have been determined." Id. (internal citations omitted). "The jury is tasked with determining the value of the stolen or damaged property." State v. Ellen Becker Goldberg, No. M2017-02215-CCA-R3-CD, 2019 WL 1304109, at *9 (Tenn. Crim. App. Mar. 20, 2019), perm. app. denied (Dec. 5, 2019) (internal citations omitted).

Viewing the evidence in the light most favorable to the State, the Defendant used a forklift to pick up Hudson's 2007 Avalanche pickup truck and flip the truck on its side. Hudson stated that his truck was in "excellent condition," and the Allstate Insurance adjuster, Don Lear, said that the vehicle was an "average to above-average vehicle." After examining the vehicle and entering the vehicle's information into a computer estimating system, Lear estimated that the cost to repair Hudson's vehicle was $9,488.24.

Because Lear determined that Hudson's vehicle was totaled, Hudson was written a check for $12,562.83, which was determined to be the value of Hudson's vehicle, minus a $250 deductible. The trial court instructed the jury to fix the value of the property to the amount of damage, and the Defendant agreed to this instruction. The Defendant argues that no evidence was presented as to the value of Hudson's vehicle before and after it was damaged by the forklift; however, this is exactly what Lear testified to. Additionally, the jury determined that the amount of damage to Hudson's vehicle was between $2,500 and $10,000, as was its prerogative. The Defendant is not entitled to relief.

## CONCLUSION

Based on the above authority and reasoning, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE